IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| TITAN WHEEEL CORPORATION OF ILLINOIS,<br><br>Plaintiff,<br><br>v.<br><br>MCDONALD STEEL CORPORATION,<br><br>Defendant. | Case No. _____ |

## COMPLAINT

Comes now Plaintiff, Titan Wheel Corporation of Illinois, by its attorneys, Schmiedeskamp Robertson Neu & Mitchell LLP, and for its Complaint against Defendant McDonald Steel Corporation, states as follows:

### PARTIES

1.  Plaintiff Titan Wheel Corporation of Illinois ("Titan") is a business incorporated in Illinois with its principal place of business located in Quincy, Illinois.

2.  Titan is a leading global supplier of complete wheel and tire assemblies and the world's largest manufacturer of off-highway wheels whose primary markets include agriculture, earthmoving/construction, and consumer applications.

3.  Defendant McDonald Steel Corporation ("McDonald") is a business incorporated in the State of Ohio with its principle place of business located at 100 Ohio Avenue, McDonald, Ohio. McDonald holds itself out as a leading domestic provider of highly engineered hot rolled steel.

00589023

1

4. This Court has jurisdiction over this matter pursuant 28 U.S.C. § 1332, based upon the parties' diversity and the amount in controversy being a sum greater than Seventy-Five Thousand Dollars ($75,000.00).

## BACKGROUND

5. On or about August 10, 2015, Titan was made aware of an issue with the gutter bands on 25" and 32" multi-piece wheels manufactured at its facility located in Quincy, Illinois.

6. Specifically, Titan was contacted by an end user after an inflation of a tire was taking place while on the wheel in a tire safety cage and the lip of the wheel detached and forcefully separated. Titan subsequently determined that the steel used in the multi-piece wheels contained an anomaly resulting in the risk of separation when mounting/demounting the tire to the wheel.

7. Titan's internal investigation and analysis of the affected multi-piece wheels identified the time period and the specific batches of steel in question.

8. Titan notified McDonald who was then able to identify through its own means that the steel in question was supplied to Titan by McDonald on or about April 1, 2015 and continuing thereafter. McDonald further confirmed to Titan that the steel it had provided was purchased by McDonald from Hamilton Steel Bar. Said steel was supplied to McDonald on or about March 13, 2015 by Hamilton Steel Bar and then shipped by McDonald to Titan per purchase order.

9. McDonald did not notify Titan that it had switched its supplier from Gerdeau to Hamilton prior to the incident of August 10, 2015. Subsequently, McDonald confirmed to Titan it had made the switch of its supplier for the steel in question due to cost purposes.

10. The issue causing the defects in the affected multi-piece wheels was found to be caused by several runs of faulty steel provided by McDonald to Titan that Titan used in their manufacturing process. The steel was found to have an anomaly in its integrity from the runs that came from the same billet of steel.

11. The steel in question, used in the affected wheels' manufacture and causing the issues identified above, was supplied to Titan by McDonald. Titan has been purchasing steel from McDonald for over twenty years.

12. With respect to the steel purchased from McDonald by Titan and found to be defective, causing the issues in Titan's multi-piece wheels requiring corrective action, each batch had been purchased by Titan pursuant to a "Purchase Order." (See Purchase Order attached hereto and incorporated herein as *"Exhibit 1."*).

13. The "Purchase Order" expressly stated on its face that "THIS ORDER IS SUBJECT TO THE TERMS AND CONDITIONS APPEARING HEREIN AND ON THE REVERSE SIDE HEREOF, AND BY ACCEPTING THIS ORDER THE SELLER AGREES TO BE BOUND THEREBY."

14. "General Provisions" appearing on the reverse side of the "Purchase Order" and applicable to each of the subject steel purchases from McDonald included the following:

> (2) "WARRANTY" Seller warrants to Buyer and its customers that the goods furnished hereunder shall (a) conform to the applicable drawings, specifications, samples and descriptions, (b) be suitable for the intended purposes, and (c) be of first class material and workmanship and be free from defects. Such warranty shall remain in effect for the period of one (1) year from the date goods are first put into use and goods found to be defective within the warranty period shall be corrected or replaced by Seller, without cost to Buyer.
>
> (16) "INDEMNITY" Seller shall defend, indemnify, and hold harmless Buyer from any and all liabilities, claims, demands, costs, and reasonable

attorney's fees for injury (including death) to persons or damage to property arising out of or resulting from (1) Seller's acts or omissions in performance hereunder; (2) defects caused by Seller in any of the goods furnished hereunder; or (3) non-compliance of any such goods with any applicable federal, state or local law.

See Exhibit 1, ¶ 2 and ¶ 16, respectively.

15. The "General Provisions" further stated that "Seller represents and warrants that in the performance of this Order it shall comply with applicable federal, state and local laws," and that "this purchase order shall be governed by and construed according to the laws of the State of Illinois." See "Exhibit 1," ¶ 13 and ¶ 19, respectively.

16. Titan has since received written confirmation from McDonald of defects, including "billet issues," in the steel supplied by McDonald and used in the affected wheels' manufacture.

17. Affected wheels were found in:

   (a) For 25" wheels, those shipped to customers with a production date range from April 22, 2015 through August 11, 2015; and

   (b) For 32" wheels, those shipped to customers with a production date range from May 15, 2011 through August 11, 2015.

18. Titan ultimately found in excess of 7,500 multi-piece wheels were affected by the defective steel supplied by McDonald.

19. On or about October 22, 2015, Titan issued a Safety Notification to all customers who purchased any 25" or 32" multi-piece wheels with a production date falling in the above-identified range, advising them to:

   (a) Immediately review their records and check inventories for any of the above-identified wheels in their possession;

  (b)  Immediately stop the mounting/demounting of those wheels;

  (c)  Immediately inspect those wheels for a production date within the above-identified ranges and, if within those ranges, stop using the equipment on which those wheels reside, and contact Titan as soon as possible in order to schedule a free inspection of the product and, if necessary, receive a free replacement.

20. To facilitate its customers' investigations of this issue, their possession of any affected wheels, and obtaining of repairs or replacements if necessary, Titan created and maintained, at its own expense, a call center with toll-free phone numbers for customers to contact with questions regarding this issue, or to request the testing, repair, and/or replacement of any affected wheel in their possession.

21. Titan also engaged, at its own expense, a nationwide network of regional offices staffed with teams of engineering experts to conduct in-field testing of any customer's affected wheels and, when necessary, take the appropriate action for their repair or replacement.

22. Titan immediately re-directed manufacturing to the production of replacement wheels for customers in possession of an affected wheel, in the process incurring loss-of-production expenses.

23. Titan also immediately tasked appropriate employees with additional duties for the investigation and assessment of issues related to affected wheels, and the implementation and oversight of corrective measures outlined above. Titan incurred expenses in paying these additional wages to employees in its accounting, production management, marketing, legal, and engineering departments.

24. Identifiable damages incurred to date by Titan as a result of these issues, for its lost production, additional employee wages, wheel replacement expenses, response costs, third-party costs, and legal fees, presently totally in excess of Four Million Dollars ($4,000,000).

25. In addition to the costs, fees, and expenses identified above, Titan has suffered intangible damages as a result of McDonald supplying defective steel, including the loss of prospective business, loss of consumer confidence, and loss of goodwill in the marketplace.

## COUNT I – BREACH OF CONTRACT

26. Titan hereby adopts and incorporates by reference paragraphs 1 through 25 above as if fully set forth herein.

27. Based on the Purchase Order, McDonald expressly warranted the steel furnished by McDonald to Titan would "(a) conform to the applicable drawings, specifications, samples and descriptions, (b) be suitable for the intended purposes, and (c) be of first class material and workmanship and be free from defects." *Exhibit 1*, ¶ 2.

28. By supplying steel that did not conform to Titan's specifications, was not suitable for its intended purposes, and was not free of defects, McDonald breached its contract with Titan and is responsible for all consequential damages incurred by Titan as a result thereof.

29. Titan has suffered damages as a result of McDonald's breach, and will continue to suffer damages in the future, including but not limited to those for:

    a.    loss of production;

    b.    additional employee wages;

    c.    manufacture of replacement products;

    d.    safety response costs;

    e.    loss of future business profits;

      f.     loss of consumer confidence; and

      g.     loss of goodwill in the marketplace.

WHEREFORE, Plaintiff Titan Wheel Corporation of Illinois, prays for judgment in its favor and against Defendant McDonald Steel Corporation in an amount in excess of Four Million Dollars ($4,000,000), along with all of its costs and expenses incurred herein and for such other and further relief as the Court deems just and proper.

### COUNT II – BREACH OF EXPRESS WARRANTY

30. Titan hereby adopts and incorporates by reference paragraphs 1 through 29 above as if fully set forth herein.

31. Based on the Purchase Order, McDonald expressly warranted the steel furnished by McDonald to Titan would "(a) conform to the applicable drawings, specifications, samples and descriptions, (b) be suitable for the intended purposes, and (c) be of first class material and workmanship and be free from defects." *Exhibit 1*, ¶ 2.

32. These express warranties by McDonald regarding the steel furnished to Titan were part of the basis of the bargain between the parties.

33. By supplying steel that did not conform to Titan's specifications, was not suitable for its intended purposes, and was not free of defects, McDonald breached its express warranties to Titan under the applicable Purchase Orders.

34. McDonald's breach was in violation of its express warranties pursuant to 810 ILCS 5/2-313.

35. Upon discovering defects in the steel, Titan provided notice to McDonald of its breach of express warranties for the steel furnished to Titan, pursuant to 810 ILCS 5/2-607(3).

36. Titan has suffered damages as a result of McDonald's breach, and will continue to suffer damages in the future, including but not limited to those for:

    a. loss of production;

    b. additional employee wages;

    c. manufacture of replacement products;

    d. safety response costs;

    e. loss of future business profits;

    f. loss of consumer confidence; and

    g. loss of goodwill in the marketplace.

WHEREFORE, Plaintiff Titan Wheel Corporation of Illinois, prays for judgment in its favor and against Defendant McDonald Steel Corp. in an amount in excess of Four Million Dollars ($4,000,000), along with all of its costs and expenses incurred herein and for such other and further relief as the Court deems just and proper.

### COUNT III – BREACH OF IMPLIED WARRANTY OF FITNESS

37. Titan hereby adopts and incorporates by reference paragraphs 1 through 36 above as if fully set forth herein.

38. McDonald's sale of steel to Titan was made with McDonald's knowledge, prior to the sale, of the purpose for which the steel would be used by Titan; namely, the manufacture of wheels for commercial tires.

39. McDonald had reason to know, prior to the steel's sale, that Titan relied upon McDonald's skill and/or judgment to furnish steel suitable for the known purpose of its use.

40. Titan did, in fact, actually rely upon McDonald to furnish the appropriate goods; namely, steel suitable for use in the manufacture of wheels for commercial tires.

41. The steel furnished by McDonald was not suitable for its known purpose.

42. Upon discovering defects in the steel furnished by McDonald, Titan provided notice to McDonald of its breach of the implied warranty for the steel's fitness, pursuant to 810 ILCS 5/2-607(3).

43. Titan has suffered damages as a result of McDonald's breach, and will continue to suffer damages in the future, including but not limited to those for:

    a. loss of production;

    b. additional employee wages;

    c. manufacture of replacement products;

    d. safety response costs;

    e. loss of future business profits;

    f. loss of consumer confidence; and

    g. loss of goodwill in the marketplace.

WHEREFORE, Plaintiff Titan Wheel Corporation of Illinois, prays for judgment in its favor and against Defendant McDonald Steel Corp. in an amount in excess of Four Million Dollars ($4,000,000), along with all of its costs and expenses incurred herein and for such other and further relief as the Court deems just and proper.

## COUNT IV – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

44. Titan hereby adopts and incorporates by reference paragraphs 1 through 43 above as if fully set forth herein.

45. At the time of the subject sale of steel to Titan, McDonald was a "merchant" of steel as defined under 810 ILCS 5/2-104(1).

46. The steel McDonald sold to Titan was not "merchantable" as defined under 810 ILCS 5/2-314(2), in that the steel did not "pass without objection in the trade under the contract description," was not "of fair average quality within the description" provided, and was not "fit for the ordinary purposes for which such goods are used."

47. Upon discovering defects in the steel furnished by McDonald, Titan provided notice to McDonald of its breach of the implied warranty for the steel's merchantability, pursuant to 810 ILCS 5/2-607(3).

48. Titan has suffered damages as a result of McDonald's breach, and will continue to suffer damages in the future, including but not limited to those for:

    a. loss of production;

    b. additional employee wages;

    c. manufacture of replacement products;

    d. safety response costs;

    e. loss of future business profits;

    f. loss of consumer confidence; and

    g. loss of goodwill in the marketplace.

WHEREFORE, Plaintiff Titan Wheel Corporation of Illinois, prays for judgment in its favor and against Defendant McDonald Steel Corp. in an amount in excess of Four Million Dollars ($4,000,000), along with all of its costs and expenses incurred herein and for such other and further relief as the Court deems just and proper.

## COUNT V – NEGLIGENCE

49. Titan hereby adopts and incorporates by reference paragraphs 1 through 48 above as if fully set forth herein.

50. In supplying Titan with steel pursuant to the applicable Purchase Orders, McDonald was negligent in its supply of steel which (a) failed to conform to Titan's specifications and requirements; (b) was not suitable for its intended purpose; and (c) was not of first-class material or workmanship and free from defects.

51. McDonald's negligent supply of defective, nonconforming, and/or unsuitable steel proximately caused Titan damages, by requiring Titan to incur expenses to notify its customers of the affected wheels, formulate and maintain national call-centers and response teams for customers with affected wheels, redirect its own employees and manufacturing processes in response, and incur legal fees in doing so.

52. Titan has suffered damages as a result of McDonald's negligence, and will continue to suffer damages in the future, including but not limited to those for:

    a. loss of production;

    b. additional employee wages;

    c. manufacture of replacement products;

    d. safety response costs;

    e. loss of future business profits;

    f. loss of consumer confidence; and

    g. loss of goodwill in the marketplace.

WHEREFORE, Plaintiff Titan Wheel Corporation of Illinois, prays for judgment in its favor and against Defendant McDonald Steel Corp. in an amount in excess of One Hundred Thousand Dollars ($100,000.00), along with all of its costs and expenses incurred herein and for such other and further relief as the Court deems just and proper.

By: /s/ James A. Hansen
James A. Hansen, IL Bar #6244534
Daniel M. McCleery, IL Bar #6321087
Attorney for Plaintiff Titan Wheel Corporation of Illinois
Schmiedeskamp, Robertson, Neu & Mitchell LLP
525 Jersey Street
Quincy, IL 62301
Telephone: (217) 223-3030
Facsimile: (217) 223-1005
E-mail: jhansen@srnm.com, dmccleery@srnm.com